UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES JACKS,
     Plaintiff,

          v.                             CIVIL ACTION NO.
                                     14-13072-MBB
LUIS SPENCER, THOMAS
DICKHAUT, JAMES SABA,
CAROL LAWTON and DENISE
McDONOUGH,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' RENEWED MOTION TO DISMISS**
**(DOCKET ENTRY # 33)**

**May 6, 2016**

**BOWLER, U.S.M.J.**

This case involves a commitment of plaintiff, an inmate at the Massachusetts Correctional Institution at Cedar Junction ("MCI-Cedar Junction"), to the department disciplinary unit ("DDU") resulting from a disciplinary infraction.  Initially committed to the DDU when he was a pretrial detainee, plaintiff's status changed to a convicted inmate, thereafter to a pretrial detainee and then again to a convicted prisoner.  Plaintiff submits that he was not given an additional hearing when his status changed and when he returned to MCI-Cedar Junction from the Nashua Street Jail in June 2013 and in April 2014.

Pending before this court is a converted motion for summary judgment filed by defendants Luis Spencer, Thomas

Dickhaut, James Saba, Carol Lawton and Denise McDonough

("defendants") to dismiss counts II and VIII from a

complaint filed by plaintiff James Jacks ("plaintiff").

(Docket Entry # 33).  Plaintiff did not file an opposition

to the motion.  Count II alleges a violation of plaintiff's

right to be free from cruel and unusual punishment secured

by the Eighth Amendment of the United States Constitution

and Count VIII alleges a violation of 103 C.M.R. 430 et

seq. based on the failure to afford plaintiff the foregoing

hearings.

<u>PROCEDURAL BACKGROUND</u>

On September 30, 2015, this court denied plaintiff's

motion for summary judgment and allowed defendants' motion

for summary judgment except for counts II and VIII, which

both plaintiff and defendants failed to address in their

memorandums.  (Docket Entry ## 16 & 22).  On December 12,

2015, defendants filed the motion to dismiss and a

supporting memorandum addressing the remaining claims in

counts II and VIII.  (Docket Entry ## 33 & 34).  On March

16, 2016, this court advised the parties it converted the

motion to dismiss into a motion for summary judgment and

gave them a reasonable opportunity to provide additional

material.  <u>See</u> Fed.R.Civ.P. 12(d).  Plaintiff did not

provide any materials and, as noted above, did not file an opposition to the motion.

STANDARD OF REVIEW

Summary judgment is designed to "'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Tobin v. Federal Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."  Pierce v. Cotuit Fire District, 741 F.3d 295, 301 (1st Cir. 2014); see also Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007) (applying same legal standard applied by district court when reviewing summary judgment ruling).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  Green Mountain Realty Corp. v. Leonard, 750 f.3d 30, 38 (1st Cir.

2014) (quoting <u>Tropigas de Puerto Rico, Inc. v. Certain
Underwriters at Lloyd's of London</u>, 673 F.3d 53, 56 (1st Cir.
2011)).  The evidence is viewed "in the light most
favorable to the non-moving party" and "all reasonable
inferences" are drawn in his favor.  <u>Ahmed v. Johnson</u>, 752
F.3d 490, 495 (1st Cir. 2014).  In reviewing a summary
judgment motion, a court may examine "all of the record
materials on file," <u>id.</u>, "including depositions, documents,
electronically stored information, affidavits or
declarations . . . or other materials."[1]  Fed.R.Civ.P.
56(c)(1); <u>see Ahmed v. Johnson</u>, 752 F.3d at 495.
"Unsupported allegations and speculation," however, "do not
demonstrate either entitlement to summary judgment or the
existence of a genuine issue of material fact sufficient to
defeat summary judgment."  <u>Rivera-Colon v. Mills</u>, 635 F.3d
9, 12 (1st Cir. 2011); <u>see Serra v. Quantum Servicing,
Corp.</u>, 747 F.3d 37, 39-40 (1st Cir. 2014) ("allegations of a
merely speculative or conclusory nature are rightly
disregarded").

"Affidavits need not be notarized to be cognizable on
summary judgment so long as they are made under penalties
of perjury in accordance with 28 U.S.C. § 1746."  <u>Uncle</u>

---

[1]  The exhibits attached to the complaint are therefore part
of the record.

Henry's Inc. v. Plaut Consulting, Inc., 240 F.Supp.2d 63,
69 (D.Me. 2003); see Goldman, Antonetti, Ferraiuoli,
Axtmayer & Hertell v. Medfit International, Inc., 982 F.2d
686, 689-690 (1st Cir. 1993) (noting that pursuant to 28
U.S.C. § 1746 "an unsworn statement signed under penalty of
perjury may be used, in lieu of a sworn statement or
affidavit, to support or oppose a motion for summary
judgment"). Plaintiff typed his name at the end of a
previous memorandum in support of his summary judgment
motion underneath a statement verifying the facts as true
under the pains and penalties of perjury. (Docket Entry #
16, p. 24). A typed name is not the equivalent of a
signature. See generally Becker v. Montgomery, 532 U.S.
757, 764 (2001). Because even accepting the facts in the
memorandum as part of the summary judgment record does not
alter the decision to allow defendants' current summary
judgment motion, this court will consider the facts in the
memorandum as part of the summary judgment record.[2]

---

[2] The factual background does not include a number of these
facts although this court considered them. The September
2015 Memorandum and Order exhaustively detailed the summary
judgment record at that time, including consideration of
the above facts. Those facts need not be repeated at
length. Defendants provide additional facts to support the
pending motion.

Speculation, conclusory statements and legal arguments in the memorandum are not part of the summary judgment record.

Finally, because plaintiff did not oppose a specific paragraph or statement in defendants' statement of undisputed facts (Docket Entry # 34, pp. 1-4), the uncontroverted statements are "deemed admitted." LR. 56.1; see Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); see also Sutliffe v. Epping School Dist., 584 F.3d 314, 321 (1st Cir. 2009) ("pro se status did not relieve" plaintiffs "of their responsibility to comply with procedural rules"). Adhering to this framework, the record sets out the following.

### FACTUAL BACKGROUND

Familiarity with the record is presumed. The facts on summary judgment are set out in the prior memorandum and order.[3] Accordingly, this court briefly summarizes such facts highlighting those that are relevant to the two remaining claims.

On July 25, 2012, plaintiff arrived at MCI-Concord as a pretrial detainee (Number A121074) awaiting trial in

---

[3] See the prior footnote.

Massachusetts Superior Court (Suffolk County) ("Suffolk Superior Court") on a charge of armed assault with intent to murder, Criminal Action Number 2001-10289 ("CR 2001-10289"). (Docket Entry # 34-1, ¶ 3). While awaiting trial, plaintiff was issued a disciplinary report on November 23, 2012 for an altercation on November 8, 2012 with another inmate ("DR 269361"). (Docket Entry # 34-1, ¶ 4). At a disciplinary hearing on February 20, 2013, plaintiff was found guilty of aggravated assault on DR 269361 and sentenced to 24 months in the DDU with 21 months to be served. (Docket Entry # 34-1, ¶ 5).

Plaintiff began serving the DDU sanction on May 5, 2013, although he was not brought into the DDU at MCI-Cedar Junction until May 8, 2013 due to bed space availability. (Docket Entry # 34-1, ¶ 6). On June 20, 2013, plaintiff was taken to Suffolk Superior Court to stand trial on an unrelated criminal charge, Criminal Action Number 2013-10302 ("CR 2013-10302"). (Docket Entry # 34-1, ¶ 7) (Docket Entry # 1, p. 21). On that same day, plaintiff was remanded to the custody of Suffolk County and housed at the Nashua Street Jail until June 24, 2013. (Docket Entry # 34-1, ¶ 7).

On June 24, 2013, plaintiff was sentenced on CR 2001-10289, assigned inmate number W102832, and transferred to

MCI-Cedar Junction as a sentenced inmate to await placement back in the DDU.  (Docket Entry # 34-1, ¶ 8).  Plaintiff was also sentenced, on that same day, in the United States District Court in the District of Massachusetts to 120 months in Criminal Action Number 12-10232 ("CR 12-10232") for distribution of cocaine within 1,000 feet of a public housing development.  (Docket Entry # 34-1, ¶ 9) (Docket Entry # 23-1, ¶¶ 9, 13).  On June 26, 2013, plaintiff returned to the DDU without receiving another hearing. (Docket Entry # 1, p. 17) (Docket Entry # 16, p. 16).

On October 29, 2013, plaintiff was indicted in Massachusetts Superior Court (Middlesex County), Criminal Action Number 2013-01362 ("CR 2013-01362"), for assault and assault and battery with a dangerous weapon.  The charges stemmed from the November 8, 2012 altercation that lead to plaintiff's DDU confinement.  (Docket Entry # 34-1, ¶ 10).

Plaintiff remained in the DDU until April 2, 2014.  On that date, he was brought into Suffolk Superior Court for a hearing on his motion to revise and revoke the sentence in CR 2013-10302.  The court allowed the motion, revoked the sentence in CR 2013-10302 and deemed the original sentence for CR 2001-10289 to have been served.  (Docket Entry # 34-1, ¶ 11) (Docket Entry # 1, pp. 15, 18).  Plaintiff was housed in the Nashua Street Jail overnight "on April 2,

2014 as a 52A"[4]   (Docket Entry # 34-1, ¶ 11) and then returned to MCI-Cedar Junction, again as a pretrial detainee (Number A127130), on April 3, 2014 to await sentencing on CR 2013-10302(2-6).   (Docket Entry # 34-1, ¶ 12).   The sentence was stayed to April 11, 2014.   (Docket Entry # 34-1, ¶ 12).

Upon his return to MCI-Cedar Junction on April 3, plaintiff was placed in 10 Block, a solitary confinement unit, to await placement in the DDU.   (Docket Entry # 1, p. 22, Ex. K) (Docket Entry # 1, p. 19, Ex. I, J) (Docket Entry # 16, p. 29, ¶ 9) (Docket Entry # 16, p. 9, ln. 7-8).   It is undisputed that he was not given a new disciplinary hearing prior to his placement in 10 Block.   (Docket Entry # 16, p. 29, ¶ 9) (Docket Entry # 23-1, ¶ 15).

On April 4, 2014, plaintiff plead guilty to various charges in CR 2013-10302.   (Docket Entry # 16, p. 30) (Docket Entry # 1, p. 21).   The stay issued on plaintiff's sentence for CR 2013-10302 was revoked on April 11, 2014 and the sentence imposed.   (Docket Entry 34-1, ¶ 14).   Again, plaintiff transitioned from pretrial detainee to sentenced inmate with a new inmate number, W104429.

---

[4]   Massachusetts law provides for the transfer of pretrial detainees to a jail if previously incarcerated in a correctional institution under certain circumstances.   See Mass. Gen. L. ch. 276, § 52A ("section 52A").

(Docket Entry 34-1, ¶ 14).  Additionally, plaintiff resumed serving his DDU sentence for DR 269351 on April, 11, 2014. (Docket Entry # 34-1, ¶ 15).

Plaintiff filed two grievances contesting his placement in 10 Block without a disciplinary infraction or disciplinary report.  (Docket Entry # 1, pp. 24-28) (Docket Entry # 16, p. 31).  The May 16, 2014 grievance and appeal sought an immediate release from 10 Block because he was held in solitary confinement without a disciplinary infraction and, whereas he was a pretrial detainee when he received the DDU sentence on February 20, 2012, he was now a convicted inmate with a new inmate number.  He also protested being stripped of the DDU privileges he had earned.  (Docket Entry # 1, pp. 24-28).

DISCUSSION

I.   <u>Violation of the Eighth Amendment</u>

Defendants initially seek summary judgment on Count II, which alleges an Eighth Amendment violation.  As framed in the complaint, plaintiff asserts that "his continuous placement in the DDU and 10-Block" caused him to suffer depression, insomnia, appetite loss, stomach pains and migraines.  (Docket Entry # 1, pp. 6-7).

Defendants maintain that the claim is moot in light of his February 2015 release from DDU.  Separately, they

10

contend that neither the placement nor the conditions in the DDU violated the Eighth Amendment.  (Docket Entry # 34) (discussing inter alia <u>Torres v. Commissioner of Correction</u>, 695 N.E.2d 200 (Mass. 1998)).

The Eighth Amendment is at least equal to and, in fact, provides fewer constitutional protections to an inmate than the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Ford v. Bender</u>, 768 F.3d 15, 24 (1st Cir. 2014); <u>see also</u> <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002) (although "[p]retrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment, . . . the standard to be applied is the same as that used in Eighth Amendment cases"); <u>Hasen v. La Jeunesse</u>, 175 F.3d 68, 71 n.1 (1st Cir. 1999) (as to "convicted prisoners, the Eighth Amendment is usually the constitutional provision referred to by the courts; but the substance of the protection is the same" as due process).

To establish a constitutional violation under the Eighth Amendment or under the "coextensive" parameters of the Due Process Clause, the "claim must meet both objective and subjective criteria." <u>Surprenant v. Rivas</u>, 424 F.3d 5, 18-19 (1st Cir. 2005) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).  Objectively, the conditions of

confinement must deny the inmate "the minimal measure of
necessities required for civilized living." Id.
Subjectively, the defendant must be "deliberately
indifferent" to the inmate's "health or safety." Id.  In
1998, the Massachusetts Supreme Judicial Court ("SJC")
upheld a summary judgment dismissal of a conditions of
confinement Eighth Amendment claim brought by inmates
confined to the DDU at MCI-Cedar Junction under the first,
objectively based prong.  See Torres v. Commissioner of
Correction, 695 N.E.2d 200, 202-204 (Mass. 1998).  After
reciting the isolated segregation and restrictions in the
DDU, which included only five hours of exercise and three
opportunities to shower and shave each week along with
daily communication with correction officers, the SJC
upheld the lower court's dismissal.  Plaintiff describes
conditions in the DDU strikingly similar to those described
in Torres.  (Docket Entry # 16, pp. 4-5); Torres v.
Commissioner of Correction, 695 N.E.2d at 202-203.  In
upholding the lower court, the SJC cited and quoted First
Circuit cases.  See id. at 204; Jackson v. Meachum, 699
F.2d 578, 581-583 (1st Cir. 1983) (very lengthy, indefinite
segregated confinement, without more, does not set out an
Eighth Amendment violation).  Although Torres did not
involve a recommitment to the DDU after a change in status

from a pretrial detainee to a sentenced inmate, it provides a basis to conclude that the conditions plaintiff depicts (Docket Entry # 16, pp. 4-5) do not contravene the Eighth Amendment.

The Eighth Amendment, however, also includes "a procedural requirement" requiring "periodic reviews" of a "prisoner's condition, his ability to reenter the general population, and the feasibility of providing means of lessening the rigors of" an indefinite and extended segregation.  See Jackson v. Meachum, 699 F.2d at 584. Unlike the circumstances in Jackson, however, plaintiff was sanctioned to the isolated and segregated confinement in the DDU and 10 Block as a result of a disciplinary infraction.  Moreover, the 21-month time period was not indefinite.  Based on the record, plaintiff also received a full and fair review of the charges against him and the opportunity to contest the charges in February 2013.  See Leavitt v. Allen, 1995 WL 44530, at *2 (1st Cir. Feb. 3, 1995) ("there is nothing in the complaint to suggest that [plaintiff] could, by amendment, add adequate allegations that this disciplinary procedure violated his Eighth Amendment rights") (unpublished).  Any additional hearing would serve no practical purpose to establish plaintiff's culpability.  See Ford v. Bender, 768 F.3d at 27-28

(affording qualified immunity against procedural due process claims for continued DDU confinement notwithstanding new charges).[5]   Accordingly, the Eighth Amendment claim applicable to the recommitment to the DDU and the conditions in the DDU is subject to summary judgment in defendants' favor.

II.   Violation of 103 C.M.R. 430, et seq.

In Count VIII, plaintiff alleges that defendants violated 103 C.M.R. 430 et seq. because he was not given a new hearing when he returned to MCI-Cedar Junction from the Nashua Street Jail in June 2013 and April 2014.   The prior Memorandum and Order allowed defendants summary judgment on the procedural due process claim under section 1983 and discussed, at length, the reasons why the process afforded plaintiff was constitutionally sufficient.   (Docket Entry # 31, pp. 13-25).

In seeking summary judgment on Count VIII, defendants argue that the disciplinary "regulations do not create a private right of action which would confer standing on

---

[5]   It is true that the Ford decision involved qualified immunity and the Due Process Clause.   If there is no controlling case law addressing the question of whether a pretrial detainee's misconduct and confinement to the DDU must be from the current period of incarceration under the Due Process Clause, see id. at 25 n.5, however, it is even less likely that the Eighth Amendment's less rigorous or concomitant protections are implicated.

plaintiff to seek declaratory, injunctive or monetary
relief." (Docket Entry # 34, p. 13). Defendants further
argue that, even if the regulations did create a private
right of action, there was no violation of 103 C.M.R. 430,
et seq. because there is no regulatory requirement for an
additional disciplinary hearing when an inmate's criminal
sentence changes. (Docket Entry # 34, p. 14). Defendants
point out, correctly, that this court already determined
that the failure to conduct the additional hearings did not
violate substantive or procedural due process under the
Constitution.

The enabling statute for 103 C.M.R. 430.00 et seq.,
Massachusetts General Laws chapter 124, section one
("chapter 124"), is cast in general terms. See Cryer v.
Massachusetts Dept. of Correction, 763 F.Supp.2d 237, 253-
54 (D.Mass. 2011); see also 103 C.M.R. 430.02 (citing
section 1(b), (i) and (q) of chapter 124 and Mass. Gen. L.
ch. 127, § 33[6] as the statutory authorization for 103 C.M.R.
430.00). Section one of chapter 124 requires the

---

[6]   Section 33 of Massachusetts General Laws chapter 127
endows "[t]he superintendents of all institutions" under
the DOC to "cause all necessary means to be used to
maintain order" in the institution. Mass. Gen. L. ch. 127,
§ 33. It is completely silent about conferring a cause of
action to inmates for violations of regulations promulgated
to maintain order at an institution.

Commissioner of Correction to "maintain security, safety
and order[,] . . . establish and enforce standards for all
state correctional facilities" and "inquire into alleged
misconduct within state correctional facilities."  Mass.
Gen. L. ch. 124, § 1(b), (c), (i); see Cryer v.
Massachusetts Dept. of Correction, 763 F.Supp.2d at 253-
254.  It also authorizes the Commissioner of Correction to
"make and promulgate necessary rules and regulations
incident to the exercise of his powers and the performance
of his duties including but not limited to rules and
regulations regarding . . . safety, discipline, . . .
classification . . . care and custody for all persons
committed to correctional facilities."  Mass. Gen. L. ch.
124, § 1(q); see Cryer v. Massachusetts Dept. of
Correction, 763 F.Supp.2d at 254.  The plain language of
the enabling statute, therefore, does not confer a private
right of action for damages for a violation of an agency
regulation promulgated under the enabling statute.  See
Battista v. Dennehy, 2006 WL 1581528, at *6 (D.Mass. March
22, 2006) ("[t]here is no suggestion in the enabling
statute, Mass. Gen. L. ch. 124, § 1, that the legislature
intended to allow private actions"); see generally
Matamoros v. Starbucks Corp., 699 F.3d 129, 134 (1st Cir.
2012) (interpreting Massachusetts law and noting that

statutory interpretation "always starts with the language of the statute itself").

Where, as here, there is no indication that the legislature intended to confer a private right of action for damages in the enabling statute, such an "action cannot be inferred solely from an agency regulation." Loffredo v. Center for Addictive Behaviors, 689 N.E.2d 799, 803 (Mass. 1989).  It is also well established that, "Massachusetts courts are 'reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference.'" Battista v. Dennehy, 2006 WL 1581528, at *6 (quoting Loffredo v. Center for Addictive Behaviors, 689 N.E.2d at 802).  No such indication supporting an inference exists in light of the text of section one of chapter 124.  Massachusetts case law interpreting the statute likewise recognizes the implausibility of plaintiff's position.  See Martino v. Hogan, 643 N.E.2d 53, 60 (Mass.App.Ct. 1994) ("[i]t is implausible to imagine that the Legislature, in granting the department authority to promulgate regulations, see G.L. c. 124, § 1; G.L. c. 127, §§ 20, 97, was empowering the department to create possible civil liability against the officials"); see also Duclerc v. Massachusetts Dept. of Correction, 2012 WL 6615040, at *10 (D.Mass. Dec. 18, 2012)

(quoting <u>Martino v. Hogan</u>, 643 N.E.2d at 60, in parenthetical).  In short, there is no indication that the legislature contemplated a private right of action for inmates to enforce the statute and a lack of any clear legislative intent to infer such a cause of action.  <u>See Loffredo v. Center for Addictive Behaviors</u>, 689 N.E.2d at 801, 803.

Indeed, the agency regulation itself rejects any such inference.  It states that, "103 C.M.R. 430.00 is not intended to confer any procedural or substantive rights not otherwise granted by state or federal law."  103 C.M.R. 430.02.  Accordingly, plaintiff does not have a cause of action under 103 C.M.R. 430 et seq. and summary judgment is therefore warranted on Count VIII.[7]

CONCLUSION

In accordance with the foregoing discussion, defendants' renewed motion for summary judgment (Docket Entry # 33) on counts II and VIII is **ALLOWED**.  Having allowed defendants summary judgment on all counts in the complaint, a final judgment will issue.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[7]  Having found sufficient grounds to grant defendants' motion for summary judgment on counts II and VIII, it is not necessary to address defendants' qualified immunity argument.